IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RICKY LEE ROBERTS, #11140-025,**<br><br>   **Petitioner,**<br><br>v.<br><br>**ERIC WILLIAMS, Warden,**<br>**FCI Greenville**<br><br>   **Respondent.** | Case No. 21-CV-00085-SPM |

### MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This action is before the Court on Petitioner Ricky Lee Roberts' ("Roberts") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 to challenge the imposition of disciplinary sanctions against him (Doc. 13). Specifically, Roberts argues the loss of 180 days good time was in violation of the policy where the Bureau of Prisons ("BOP") could take no more than 41 days of good conduct credit (*Id.*). Respondent filed a response to the petition on August 9, 2021 (Doc. 20). Any reply was due on or before August 23, 2021; however, no reply has been received. For the following reasons, the Petition will be denied.

### RELEVANT FACTS AND PROCEDURAL HISTORY

On January 7, 2015, Roberts pled guilty to one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 841 (a)(1) in the United States District Court for the Southern District of Illinois, *to wit:* 4:13-cr-40118-JPG-4 (CR. 121).[1] On

---

[1] All documents cited to the underlying criminal case will be designated as "CR.", while all documents cited to this 2241 matter will designated as "Doc.".

May 21, 2015, Roberts was committed to the custody of the BOP (CR. 148). Although this petition concerns an incident that occurred while Roberts was incarcerated at FPC – Terre Haute, he is currently incarcerated at FCI – Greenville, which is located within this district, and filed the instant petition while an inmate at that facility (Doc. 13). According to the Bureau of Prisons website, Roberts' projected release date was calculated to be December 19, 2026[2].

As set forth in incident report # 3280212 prepared by T. Nichols:

> "At approximately 1240 (12:40 pm), on Wednesday 07-17-2019, this officer observed inmate Roberts II 11140-025 in possession of a cellular phone … Inmate Roberts was holding it with his right hand and typing on the screen with his left hand … Inmate Roberts unplugged the cell phone and left the charger cord laying across the bed … The inmate attempted to place the phone in his pocket … Inmate Roberts handed this officer the phone with his left hand." (Doc. 20-4).

Roberts was cited for possession of cell phone, which falls in prohibited act code 108 (*Id.*). The incident report indicates that it was delivered to Roberts at 1455 hours on that same date (*Id.*). Roberts was placed into Administrative Detention pending investigation (*Id.*, p. 6).

A hearing was held on July 24, 2019 before the Unit Disciplinary Committee ("UDC") (*Id.*). Lt. Sherman indicated that at 11:07 on 7-24-19, Roberts was "advised of his rights and acknowledged that he understood those rights. He received a legible copy of the report on 7-24-19." (*Id.*, p. 3). The UDC recommended action, *if* incident was referred to a Disciplinary Hearing Officer ("DHO") and *if* the DHO found Roberts committed the act (*Id.*)(emphasis added). This incident was

---

[2] *See* https://www.bop.gov/inmateloc/ (last visited 9/9/21)

referred for further investigation by C. Cox on 7-24-19 (*Id.*, p. 8).

On July 26, 2019, Roberts signed and dated that he received a copy of "Inmate Rights at Discipline Hearing" (*Id.*, p. 9). Within the form, Roberts also indicated that he did not wish to have a staff representative and did not wish to have witnesses (*Id.*, p. 10).

On August 2, 2019, a hearing was held before DHO J. Bradley who confirmed that Roberts had been advised of his rights before the DHO and stated his understanding (*Id.*, p. 11). At the hearing, Roberts admitted to his guilt, which supported Bradley's finding that Roberts committed the prohibited act of Possession of a Hazardous Tool (cell phone), Code 108 (*Id.*). DHO Bradley sanctioned Roberts as follows: 41 days disallow good conduct time; 180 days forfeit non-vested good conduct time; 180 days loss of phone; 30 days impound property; 30 days QTRS restriction; and, $150.00 fine (from a $212.82 balance) (*Id.*, p. 13). DHO Bradley's report provided rationale for the sanctions, and specifically stated:

> "Possession of a cell phone is considered a hazardous tool in a correctional environment as it can be used in an escape attempt or to serve as a means to introduce contraband, circumvent inmate phone monitoring, and pass on illicit information. Inmates who circumvent the phone monitoring by using a cell phone, have been known to disrupt the safety and security of the institution, by arranging drug/contraband introductions, providing messages related to gang activity, and/or to extort money. The sanctions imposed by the DHO were taken to express the gravity of the infraction and let the inmate know that he, and he alone, will be held responsible for his actions at all times. Although not directly related the infraction, privileges were taken to deter the inmate from this behavior in the future" (*Id.*).

On October 1, 2019, M. Shaffer indicated that Roberts was provided a copy of the DHO Report at 0800 (*Id.*, p. 14).

## GROUNDS FOR HABEAS RELIEF

Roberts does not contest committing the offense; instead, he contests the categorization of the offense, the resulting punishment(s), and the notice provided (Doc. 13). Roberts previously raised the following issues: (1) He was charged with too severe an offense level; (2) He was sanctioned with both loss of statutory good time and C.F.R, which states "or", which means either one, but not both; (3) Because he was fined approximately 75% of the total funds in his account, it was too excessive under the Constitution; (4) The sanctions were too severe due to them being his first BOP disciplinary infraction; and (5) DHO was in violation of his Due Process rights in that he never received the DHO report until 10/1/2019 so he did not know his rights (*Id.*, p. 10).

The government rebuts all of the arguments raised by Roberts (Doc. 20). First, Roberts had notice of the severity level of the offense (*Id.*). Second, the sanctions were permissible and non-excessive (*Id.*) Third, the sanctions were within the DHO's discretion and were consistent with the severity of the offense (*Id.*). Finally, none of Roberts' rights were violated (*Id.*).

## APPLICABLE LAW

A petitioner may bring a petition under 28 U.S.C. § 2241 to challenge the fact or duration of the petitioner's confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 490 (1973). This includes challenges regarding the wrongful revocation of good conduct credit. *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983).

Prisoners are entitled to due process before being deprived of their liberty interest in earned good conduct credit. *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007). The due process requirement is satisfied with: (1) the issuance of at least 24 hours advance written notice of the charge; (2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; (3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and, (4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985).

## ANALYSIS

1.  **Severity of Offense**

Roberts first alleges that he was charged with "too sever[e] offense" and that he should have been charged with a high offense (297), not a greatest severity offense (108) (Doc. 13). The Inmate Discipline Program followed by is codified at 28 C.F.R. § 541.1, *et seq.*, and states:

> "This subpart describes the Federal Bureau of Prisons (Bureau) inmate discipline program. This program helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts. Sanctions will not be imposed in a capricious or retaliatory manner. The Bureau's inmate discipline program is authorized by 18 U.S.C. 4042 (a)(3)."

Each prohibited act is pre-designated into one of four categories based on severity: Greatest; High; Moderate; and Low. 28 C.F.R. § 541.3 (a).

Roberts was charged with 108, a severe level offense defined as follows:

> "Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt

> or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device" (Doc. 20-7, p. 44).

Infraction 108 clearly contains the language "portable telephone". While Roberts contends he was in a camp and not likely to escape and that this offense was most likely to occur at a medium or high level institution, there is no distinction in the rules. Furthermore, there are other explanations for why a portable telephone falls into this category, including that it can be hazardous to institutional security or personal safety. Indeed, DHO Bradley's report confirmed that a cell phone could disrupt the safety and security of the institution (Doc. 20-4, p. 13).

Roberts contends that he should have been charged with high offense 297; however, that offense is not applicable to this situation and deals with use of the facility's telephones and does not specifically mention cellular or portable phones. According to the Inmate Discipline Program, all infractions are to be applied uniformly throughout the BOP institutions. 28 C.F.R. § 541.1. As such, this Court finds that the appropriate infraction was identified and was not too severe.

### 2. Excessive Sanctions

In addition to identifying the various infractions and designating each prohibited act into one of four categories based on severity, the Inmate Disciplinary Program also sets forth available sanctions for each applicable level. Roberts contends that his sanctions were excessive in that: (1) he could not lose both statutory good time AND C.F.R (non-vested credit); and, (2) the fine was approximately 75% of the total funds in his account (Doc. 13, p. 10).

As hereinbefore determined, Roberts was appropriately charged with a Level 108 offense that falls into the greatest severity level prohibited acts. As such, "If you committed a prohibited act, the DHO can impose any of the available sanctions listed in Tables 1 and 2." 28 C.F.R. 541.8(g). With respect to good time, the following two sanctions are available under Program Statement 5270.09[3]:

> B.  Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time; and,
>
> B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year.

Since Roberts offense occurred after April 26, 1996, the DHO must impose B.1., but the DHO can also apply B. (PS 5270.09, p. 11). It is not an either/or situation. (*Id.*). Roberts was disallowed 41 days of good conduct credit, which falls within B.1. He also forfeited 180 "non-vested" days, which was allowable as he had accumulated 270 "non-vested" days of good conduct time as of November 6, 2019 (Doc. 20-5). As shown in the sentence monitoring form, there are two separate columns for time that is disallowed (as was the 41 days of good conduct credit) and time that is forfeited (as was the 180 days of non-vested good conduct time) (*Id*). Therefore, Roberts is mistaken that the sanction was excessive and duplicative as the DHO followed the Inmate Discipline Program.

Roberts also argues that the fine imposed was excessive as it was approximately 75% of the total funds in his account (Doc. 13, p. 10). This argument is without merit as a monetary fine is an available sanction under Section E. for

---

[3] *See* https://www.bop.gov/PublicInfo/execute/policysearch/5270.09; cited herein as PS 5270.09.

greatest severity level prohibited acts (Doc. 20-7, p. 46). Furthermore, "[T]he DHO may direct that an inmate pay a fine, as follows: greatest severity level offense – up to $500, or 75% of the inmate's trust fund balance" (*Id.*, p. 15). Clearly, DHO Bradley complied with the sanction recommendations.

Finally, Roberts contends that the sanctions were too severe given this was his first infraction, but again, this argument lacks merit. DHO Bradley was within the sanctioning guidelines. Furthermore, there are additional sanctions available for repeated prohibited acts within the same severity level, so were this not the first infraction, the sanctions could have been higher. The inmate discipline program was created to foster uniformity and prevent capricious and retaliatory execution. As such, an argument for individualized treatment and consideration is not something than can be redressed in a habeas petition.

### 3. Due Process

Roberts has not established that he was denied due process in connection with the disciplinary proceedings. As set forth *infra*, in the prison disciplinary context, due process requires only that the prisoner receive advance written notice of the charges, an opportunity to present testimony and documentary evidence to an impartial decision-maker, and a written explanation for the discipline that is supported by 'some evidence' in the record. *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003). The findings of the DHO must be supported by some evidence in the record, which is a low bar or meager threshold. *Superintendent,* 472 U.S. at 447 (1985); *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed, our inquiry ends").

Although Roberts claims he did not receive notice, the record is replete with documentation showing the contrary. Incident Report 3280212 indicates it was delivered to Roberts on 7-17-19 at 1455 (Doc. 20-4, p. 2). It further indicates it was delivered to Roberts on 7-24-19 at 11:07 a.m. (*Id*.). On 07-26-19 at 1215, C. Purdue signed that he gave Inmate Rights at Disciplinary Hearing to Roberts, which was also signed by Roberts (*Id*., p. 9). On that same date, Roberts also signed that he did not wish to have a staff representative and did not wish to have witnesses at the disciplinary hearing (*Id*., p. 10).

Following the hearing, there is a signature of M. Shaffer indicating the DHO Report was provided to Roberts on 10-1-19 at 0800 (*Id.,* p. 14). The report set forth the sanctions as well as the rationale for the sanctions (*Id*.). Finally, as to whether there was 'some evidence' to support the decision, the DHO considered the apology to the reporting officer, the apology to the UDC and the statement of guilt at the hearing (Id., p. 12). Clearly, the meager threshold has been satisfied and the inquiry ends as there has been no showing of any due process violation.

## CONCLUSION

For the foregoing reasons, Roberts' Petition for habeas relief under 28 U.S.C. § 2241 (Doc. 1) is **DENIED**. This cause of action is **DISMISSED WITH PREJUDICE**. The Clerk of Court shall enter judgment accordingly.

If Petitioner wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Petitioner plans to present on appeal. *See* FED. R. APP. P.

24(a)(1)(C). If Petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

**IT IS SO ORDERED.**

DATED: <u>September 24, 2021</u>

*s/Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**United States District Judge**
